Good morning, Your Honor. Good morning, and may it please the Court. Amy Pomerance on behalf of the United States. I'll be reserving three minutes of time, and I will try to watch the clock. All right. Thank you, Counsel. Thank you. The District Court in this case held that the longstanding sentencing framework passed by Congress in the mid-1980s violated the defendant's rights to equal protection under the Fifth Amendment. This holding was not only incorrect, but it was premised on a serious legal error with potentially profound consequences. Now, there is no dispute that rational basis review applied in this case. Prisoners are not a suspect class, and there is no fundamental right to compassionate release. And under an ordinary rational basis standard, the statutory scheme should have easily passed constitutional muster. As this Court probably knows, rational basis is a highly deferential standard to the legislature. A statutory scheme is presumed to be valid, and it's upheld as long as there is any conceivably rational relationship between the classification and a legitimate government purpose. Counsel, in the prior appeal, didn't we already uphold the statute against constitutional challenge? In the prior appeal, in the first case, the defendant argued that he should have been allowed to file a compassionate release motion on his own behalf under the new law regime. What the Court held is that, no, he was subject to the old law regime, and therefore, he could not bring such a motion. And we held that — I thought we held that the statute was — had a rational basis at that point. In United States v. King, this Court explicitly held that there was a rational basis for Congress's decision not to extend the availability of compassionate release towards these old law defendants. And it said, essentially, that old law defendants have a separate avenue to seek early release in the parole system. What is the problem with that is that the BOP has, by regulation, determined that it will not seek compassionate release on the part of any prisoner who is in prison for life without the possibility of parole. So do they really have an avenue? Well, yes, Your Honor. I mean, the question is whether the statutory classification or government action is rational. And so if we're going to construe defendants' equal protection claim as challenging just that particular BOP regulation, then, yes, it is absolutely rational. It is rational that we would preclude BOP from exercising discretionary authority to seek early release for a prisoner who, by definition, received a sentence precluding him from early release. You know, a sentence of life without parole, an LWOP designation, if you will, that is intended to be final, is intended to be terminal. It's a feature, not a bug. And so where Congress or a sentencing judge has decided that a particular prisoner should stay in prison for the remainder of his life, it's entirely rational that we would not allow BOP to second-guess that decision. So that concerns that. Well, it's not that we wouldn't allow them to do it. They've elected not to second-guess it because they could still file a motion, but they've elected not to do it through the regulation. So they're not prohibited from doing it. They have elected not to do it. That's true. I mean, Congress could have chosen a different policy. BOP could have chosen a different regulation. But in this particular case, that's not the right question. The question is not whether Congress or BOP chose the most fair, most perfect policy, although I do think that the policies in this case are fair. The question is whether they're irrational.  You think they are fair, even though someone in Mr. Matalopes' situation is, you know, the reason in King that the scheme was rational was that old law prisoners could still get parole. But Mr. Matalopes and people in his situation will never be able to get parole. I understand that. So is there not any unfairness there? Your Honor, I think the statutory scheme that Congress enacted and designed is fair. Now, just to back up, that's not the question. The rational reason finding in King doesn't apply to this particular defendant. That is true, but that's also that goes to the district court's fundamental error. The district court got answered the question wrong because it asked the wrong question. On rational basis review, we do not ask whether Congress's rational basis applies to a particular claimant. That approach actually contravenes Supreme Court precedent, which says that we don't consider what Congress's actual purposes are in passing a certain statute. And this Court has repeatedly said that on the ---- I'm asking a fairness question. Is it fair? I think it is fair. Mr. Matalopes received two life sentences without parole because he was one of the largest drug traffickers in the world. He was one of the first people to connect the South American cocaine producers with the Mexican drug cartels. He imported tons of cocaine worth hundreds of millions of dollars on fleets of private jets that he commandeered. The magnitude of his crimes is honestly a little bit hard to wrap our heads around. He was one of the ---- Can I ask you, the district court said that the government had waived its challenge to the similarly situated. And did you waive that point? I don't think we ---- You don't discuss it in your reply brief. So are you abandoning that issue? I don't think we waived that point. I think the fundamental point is that an LWOP designation reflects a judgment that the crime committed is more serious, more egregious, that this defendant deserves to stay in prison for the remainder of his life. Now, I don't think the Court has to decide the similarly situated issue. That's a threshold question as far as equal protection analysis is concerned. I think this Court ---- Was the district court wrong in its order when it found that? I think it probably was. But I think that in this case, there is so obviously a rational basis for the statutory classification that this Court could resolve it in the same way that this ---- on Bonk Court did in Olson, where it said that, you know, even if we're just going to assume these two groups are similarly situated, but there's a rational basis regardless. And you don't address it in your reply brief here. I don't. Except to the extent that it goes to the reasonableness, the rationality, of excluding prisoners without a life without parole, because they are fundamentally worse. On de novo review, we can, of course, analyze all of the elements. Absolutely, Your Honor. Absolutely. And if you like, I can ---- if you look at ER11, I can pinpoint the exact point where the district court's analysis got off track. You know, the district court actually identifies two rational bases for the cutoff date and the statutory scheme. It talks about how there was the November 1, 1987 effective date was based on ex post activity issues. But then it says the defendant's argument is persuaded because as applied to him, 18 United States Code section 3582C does not increase any punishment for him. Now, this sentence is actually wrong on its face. 3582 doesn't increase sentences for anyone. It's a sentencing modification statute. But setting that aside, the point the district court I think is trying to make is that the ex post facto rationale didn't apply in defendant's particular case. And again, this is the wrong question to ask on rational basis review. And the Court does it again at the bottom of this page. It says he was sentenced to life without the possibility of parole, and therefore he does not benefit from the rational basis reason for the cutoff date recognized in King. The Court cites no authority for this personal benefit test. And none exists. It is inconsistent with a doctrinal framework. And the reason this is so concerning is that what the Court is actually doing is upending kind of the tiers of scrutiny that have guided Federal courts in evaluating constitutional claims for half a century. What it's saying here is that even though rational basis exists, we're going to ask another question just because defendant's ---- But that has been done before, right, the as applied analysis? The only case I'm aware that is even kind of remotely similar is city of Cleburne, which I think is an opposite for several reasons we discussed in the reply brief, but I'm happy to address here as well. What's your best what you think is rational reason? For the cutoff date? To deny relief here to Mr. Mata Lopez on his equal protection claim. What's the best rational reason? Yeah. So I think the statutory scheme is rational no matter how you slice it. Congress rationally decided to create a new, improved sentencing regime in the Sentencing Reform Act, and it rationally decided to apply it prospectively by setting a cutoff date at November 1st, 1987, separating old law prisoners who could largely continue to get early relief through the parole system from new law prisoners. Congress also rationally decided in 2018 in passing the First Step Act to expand the opportunity for compassionate release to new law prisoners sentenced under the SRA who did not have this parole avenue for early release by allowing them to file motions on their own behalf. That was a rational choice. And to the extent that what we're talking about is this regulation, which I think is, you know, Mr. Mata Lopez's real hurdle in getting the compassionate release motion he seeks, that, too, was rationally based. You know, I've discussed this already a little bit, but you can also think of it from a separation of powers lens, you know. It is rational that a regulation would disallow an executive branch actor like the BOP from essentially second-guessing the LWOP designation, which reflects a judgment vested in the either judicial, legislative branches, or both, that this defendant should stay in prison. But doesn't that state assumes that individuals sentenced before November 1, 1987, are eligible for parole? So it almost doesn't account at all for someone like Mr. Mata Lopez and people in his situation. I understand that, Your Honor, but on rational basis review, the Supreme Court has been very clear. In a number of cases, Vance v. Bradley is an example, the Railroad Retirement Board v. Fritz is another example, Congress can draw hard lines. It does not have to think about every constituency that might be affected by that line drawing. And the Supreme Court has repeatedly held that even if legislative line drawing isn't perfect, even if it's over-inclusive or under-inclusive, as long as it is rational, it survives rational basis review. The Supreme Court has told us even if the results are harsh. That's right. If there's a rational basis for it, it must be upheld. That's right. We do not require a perfect fit between means and ends on rational basis review. That is a very consistent principle that has been held by the Supreme Court in numerous cases and affirmed by this Court repeatedly. And the district court's opinion flies in the face of all of that precedent. So I think I'm going to reserve the remainder of my time for rebuttal unless the Court has any further questions. Thank you, Counsel. Thank you. Good morning, Your Honors. Mark Windsor on behalf of Mr. Mata, on his behalf and on behalf of Mr. Mata's family. I thank the Court for bringing this case to where it is right now so quickly. May it please the Court. There is a fundamental difference between the analysis in King and Mata 1 and an equal protection analysis. And this is why those two cases do not control here. Statutory analysis as it was conducted in those two cases, in those cases it's all about the language of the statute. And they come to the conclusion in both those cases that the language is plain. That the language is what? Is plain and clear. Well, isn't that the law of the case for Mr. Mata then? If he had a prior appeal and we determined that the statute was rationally based, can we revisit that determination here? I am not asking this Court to revisit that determination because that determination is quite specific. There is plain language to the statute according to these courts. And if we follow that plain language, it is not absurd because there is some reason for it as it applies to someone. Well, in this way, that analysis, if it's similar at all to equal protection, it's similar to a facial challenge to a statute, which is not what's happening here. That was an as-applied challenge. No. The prior appeal was an as-applied challenge. It wasn't a facial challenge. Yes, but it was a challenge couched in statutory construction. And the absurd analysis is based That's the same thing as saying whether or not it's rationally based. I would submit, Your Honor, that it is not. And I think every case cited by the government shows that. Because if you look to the analysis in King and Mata, they acknowledged that the reason they had come up with for it not being absurd did not apply to Mr. Mata. So what case supports the proposition that a determination of using the word absurd is different than determining whether or not there is a rational basis for the statute? You can look to the analysis. No, I want you to give me a case because you're making a distinction between whether or not a statute has absurd results and whether or not it has a rational basis. And I don't think there's a distinction. So the case is King. So what does King say? And Mata 1 even. And Mata 1 controls here. It's not published. But, yes, there's a case. This is the law of the case. But, okay. Well, no, let me try to make it clear for you. Because I agree there's a lot of confusion on many sides here. Okay? In Mata 1, the court says, you know, there is some reason for this distinction for following the plain language of this, of the statute. Statute language is plain. And there's a reason for it if we follow it. So that equals rational basis, correct? No, because what happens — if you look at every case here, Olick, Olson, even Beach Communications, it's all about the specific classification that is formed by the part of the statute that is challenged. And it's almost always a specific as-applied challenge. But our charge is to determine whether or not the statute is constitutional. Yes. Correct? And the way we do that, if it's not a suspect class, which it's not here, is determine whether or not there's a rational basis for the statute. That is connected to a legitimate government purpose. Yes. Correct. That's an equal protection. Yes. And the way that the analysis is done in every one of these cases and in the district court opinion, if you look at the district court opinion, it is meticulously reasoned. Mr. — Judge Kronstadt, the Honorable Judge Kronstadt shows his work, as my 10th grade math teacher liked to say. It's all there, the reasons for his conclusion. But the framework of the analysis is exactly the same as Beach Communications, that the government relies on so heavily. It's the same as OLEC. It's the same as Olson. They look to the classification, the nature of that classification, and whether there is a rational basis for that classification, that specific classification that's connected reasonably to a legitimate government purpose. In the statutory analysis that is exercised in MATA 1, the only question they asked after finding the plain — the language was plain. There's no ambiguity there. The only question we have to ask is, if we follow that plain language, does it lead to an absurd result? And the finding in MATA was there is some reason for it, as it applies to someone out there. So sorry. Can I — No, but no, not as applies to someone out there. As applied to this person that we're talking about in the case. But the court knew, and I pointed out to them, that it did not apply to Mr. Mata. That court, the court in MATA, was well aware of the BOP regulation. And I made that argument to them. That was the basis of why it was absurd. That's not the basis. That's not the part I'm challenging here, by the way. And I want to make that clear. But the court — the point of it was that they were ruling on Mr. Mata's case. They weren't ruling on a facial challenge. Right. They were ruling on Mr. Mata's case specifically. Yes. I understand that. But the analysis they used, because it's statutory construction, was if it's similar to EP, to equal protection at all, is similar to a facial challenge, where if you find any justification as to anyone, you can uphold the language of the statute. You don't have to strike down the whole statute, which is what a facial challenge does. That's not what we're asking here. Counsel, tell me the language in Olson specifically that you're relying upon. I don't rely on the language. I rely on the framework. I think the government's main argument is that the district court used the wrong framework, asked the wrong question. That's not true. Look at Olson. What they do there is they analyze the actual distinction and whether it's fair, whether there's a reason for it. Okay? And they're very specific in their analysis. The analysis is specific to Uber. They decided that Uber was the main problem, and so it makes sense for them to cordon off Uber in that case under that analysis. They used the same analysis as the district court here. The fact that they came to a different conclusion was entirely due to the specific facts of that case, not the framework of the analysis. Let me ask you, the government says you have a lot of theories, and it's not clear exactly what you're challenging. Are you challenging the November 1, 1987 cutoff date?  Are you challenging that the First Step Act broadened the group of people who were eligible for compassionate release, or are you challenging the BOP regulation that says we're not going to move on behalf of anyone who has a life without parole sentence for compassionate release? What is it? Thank you for that question, Your Honor. It is the first, and only the first. I am challenging the part of the law that creates the distinction. The rest of it does not create the distinction. It's part of the circumstantial analysis. Okay, but then how are those people similarly situated? Because anyone who gets a life sentence after November 1, 1987, is eligible for supervised release, potentially. So they're not in the same position as anyone who has life without parole. Life under new law is life. You are not eligible for supervised release if you get a life sentence. It's just like life without parole. Those of you who are familiar with old law, and of course we're all familiar with new law, know that there's no practical difference. There is none. But that's not even, I was confused by the district judge's decision because the district judge defines the comparators as somebody who commits the same offense both before and after the date. Why was the comparator defined that way in that decision? Because I don't think those are necessarily the same, right? As we know with criminal sentencing, you have to look at the nature and characteristics of the offense as well as the history and characteristics of the defendant. There are a lot of issues there that does not make someone get the same sentence just because they committed the same statutory offense. Well, if you want to limit the class to just CCE defendants, to just That's how Mr. Mata was sentenced to life, was under that. This case shows quite... But that's not, but you agree with me, the district judge's comparator, by just saying I want to look at people who committed the same offense before and after this November 1, 1987 date, those are not similarly situated people in my mind. So to be clear... They didn't even necessarily get the same sentence even if you commit the same offense. Well, you can narrow the class if you want to, Your Honor, but I don't think the district court is creating the class under those terms. The district... I mean, that's the way I read it. When I kept looking at who is he saying are the similarly situated people, he kept saying committed the same conduct or same offense. And that didn't even reference the sentence. So I didn't see how those people were similarly situated. Well, first of all, in the context of a continuing criminal enterprise, there's a mandatory life sentence. So it doesn't matter what your conduct is or the specific circumstances of your case. You're getting life because it's mandatory by statute. So none of those nuances matter. So if you want to limit the class to continuing criminal... That's not our role. Our role is not to come up with new comparators and do a new equal protection analysis. We're just looking at this decision, and this decision defines it as conduct. I'm sorry I can't find the language right now, but I remember reading it thinking these are not even the same sentence that's being compared.  So the class actually... What I'm contending, and I think what the district court couched it as, is the two classes are those sentenced to life without parole under old law and those sentenced to life under new law. For the same crime that occurred on or after November 1, 1987. Well, you can limit it to that. Okay. You can limit it to career criminal if you want to. No, it's not what we want to do. It's how we determine this under the law. Well, either way, either way, there are similarly situated inmates on both sides of the line here. Well, if you're sentenced under a different sentencing regime, are you similarly situated? As far as everything but that, yes. For instance, the Underwood case, which I highlight in my answering brief, involves an inmate who committed most of his CCE crimes before November 1, 1987. At sentencing, he argued that he should be sentenced under old law because he thought that would give him a better sentence. The district court said, no, you know what, at least one or two of the things you did happened after November 1, 1987. So you're getting the new law. Okay. Exact same crime. Most of it committed before November 1, and yet he's sentenced under new law. And he's holding that. Doesn't that beg the question, if it makes a difference? I think it shows it doesn't. There's no difference between these people because Underwood could have fallen into either category. He's the same guy.  So I'm not getting through to you guys. I want to do that. I'm confused. But let me just ask you. I want to go back to Olson. Yes. And what the conclusion in Olson was. After they went through all the analysis you rely on, here is the bottom line that the panel said. In evaluating the constitutionality of the statute under the Equal Protection Clause, we ask whether plausible reasons exist for the law.  Under the specific facts of that case. Of the distinction. They look at the particular case. But that's not the holding of the case. It says whether plausible reasons exist for the law. And that's consistent with what all of the other cases say. Okay. They go through the analysis, of course. And we have to look at the facts. But the bottom line is we look at whether or not there is a plausible reason for the law. Okay. I'm running out of time. Let me just make this brief. The whole analysis is do we have a classification? Yes. Is there a similarly situated group on the other side of this? Yeah. I would assert yes. District Court correctly found yes. And I think if you look closely at my papers. We have to determine if it was correct.  Right. So, if yes, then the whole thing is, is there a rational basis for that distinction? And here's the distinction. And why isn't it rational for Congress and the Bureau of Prisons to say, for an individual who's sentenced to life without parole, they should serve a sentence of life without parole? Under the circumstances of old law, that's not irrational. They can do that. But now they've created a benefit because they've seen, as we all see, and compassionate release, by the way, exists for this reason. Things change. What a person is in 1987 is not necessarily who they are in 2025. One of the key factors. Because then the Bureau of Prisons can file a motion for compassionate release on behalf of those individuals. So what you're really challenging is the Bureau of Prison regulation that says we're not going to file a compassionate release motion on someone who's been sentenced to life without parole. No, Your Honor. That's really what you're challenging, right? It is not at all what I'm challenging. I'm not challenging the legality or applicability of that. I am running out of time. I would request more time to answer that question. Please. Okay. So what I'm really challenging is the classification here. That's what equal protection is all about. And the thing that makes the classification, the only thing that makes it, is that cutoff date. Because this law, this new, this First Step Act, is not just proactive like the government has said. It is proactive and it is retroactive way into the past. It incorporates tens, probably hundreds of thousands of inmates that they bring into the courtroom. Okay? And then it slams shut the courthouse doors at November 1st, 1987, for no reason. But, counsel, we've said that harsh lines can be drawn. If there's a reason for it. If there's a rational basis that's connected to a legitimate purpose. The government has said why isn't the availability of parole a rational reason for that date versus supervised release? Because it does not apply to this classification, which is old law inmates sentenced to life without parole. But that's the line drawing. That's the line drawing function of the legislature that you're challenging then. No. I mean, I'm challenging the fact that there is no rational basis for this particular line drawing. Okay. Because you're taking hundreds of thousands of inmates, you're suddenly stopping short and leaving, I believe, 19 inmates nationwide out in the cold. All right. So this is not an incremental argument or something like that. We understand your argument. Can I ask one question? Sure. So you're not making this as applied challenge just as to Mr. Mata Lopez. No. You're making it on behalf of all old law life without parole inmates. Yes. They are all in the same position. And as we can see from this case, if they get a chance to be heard by a judge, they will get compassionate release. They may or may not. We can't decide what the judge is going to do. But Mr. Mata would. We know that. Well, before this judge he would. We don't know that before every judge it would be the same thing for all of the people that you're advocating for. Well, this is the sentencing judge for purposes of that. Exactly. But that's the point. You're saying that you're talking for everyone in that category.  And that wouldn't necessarily be the case for everyone. Oh, they might not get it. Right. But they certainly should get the opportunity. We understand your argument. Thank you, counsel. Thank you, Your Honors. Thank you for your time. Rebuttal. Thank you. Can I just clarify something? And I apologize. I don't know the answer to this. So for the individuals post-November 1, 1987, who get sentenced to life sentences, they have no possibility of supervised release. Is that correct? There is a supervised release component of that sentence, but they would have to complete the life sentence before they would be eligible for supervised release. How could you complete a life sentence if there's no possibility of a supervised release? That's a fair point. If I may, I'd like to kind of pick up where we just left off with Judge Koh's question about the scope of this holding, because I know that it seems though my friend over here is defining the class on behalf of all LWAPs. If you look at the district court's holding, it seems to be very specifically limited to this defendant. I think that Judge Rawlinson actually has the right idea in how we're analyzing these claims. You know, this is not a civil class action where we get to define the class the way we want. What we are doing here is asking whether a statutory classification, a government action, is constitutional. And so now Mr. Windsor has clarified. Why aren't those comparators actually similarly situated? I think I've come around on that then. Well, I don't believe they're similarly situated. Why? Because the punishment was definitionally meant to be worse based at the time. It is entirely appropriate to have two fundamentally different sentencing systems. And within that framework of the old law defendants, people like Mr. Mata Lopez were deemed to have been more dangerous or more grievous. And you don't think someone who today, post-November 1, 1987, gets a sentence of life with no possibility of supervised release is in the same boat? I don't necessarily, Your Honor, but the point I want to make here is that when you're looking at the rationale, what we're doing is assessing the rationality of a particular government action, which now Mr. Windsor has clarified is that November 1st cutoff date. And so the only question that matters is whether Congress had a rational reason for implementing the sentencing law changes prospectively for that cutoff date. Otherwise, we're just second-guessing the legislation. Otherwise, we're second-guessing. That November 1st cutoff date has nothing to do with LWOPs, right? I mean, it was a decision that was made probably to avoid the retroactivity litigation, which is a rational basis. And on rational basis review, the claimant has the burden of disproving any rationality. Wouldn't it have been more fair to require the BOP to make the motion on behalf of an individual with a life sentence under the new law? It could have done so. So they would have been more comparable and equally treated. Possibly, yes. It could have done so. But the question is whether the policy it chose is irrational, is arbitrary, is unconstitutional, violation of equal protection. You know, equal protection does not require perfect parity between different sentencing regimes. Congress is allowed to draw hard lines. It is allowed to address problems incrementally. That is what it did in Olson. That's what this Court held. It is — Counsel, I think part of the confusion is that this is just one part of the statute. There are other parts of the statute that could affect sentencing, and that's why the ex post facto issue was raised. Absolutely, Your Honor. I completely agree with that. But the Constitution permits Congress to treat different sentencing errors differently, even if that results in some disparity between post-conviction procedures. Now, the district court believed that Congress's line drawing didn't make sense for this specific person, but that is not the test. The question is whether the statutory scheme that was designed by Congress in the 1980s is irrational. And for all of the reasons that we've discussed today — Let me ask you. You said the district judge only made the as-applied challenge as to Mr. Mata-Lopez. Is that because the defense only argued it as to him and not as to all old-law inmates? That's a good question, Your Honor. I don't know if it's because the district court's holding was rooted in some sympathy it felt for Mr. Mata-Lopez and his medical conditions. I don't know if it just reflects the — Were you the AUSA below? I was not, but I was at the hearing. Okay. I don't know. Maybe it reflects some lack of confidence in its constitutional analysis. I am not sure why he wrote the cutoff date as-applied defendant violates his Fifth Amendment right to equal protection. But certainly, on rational basis review, we do not look at a claimant's particular circumstances. That is what this Court held in Russell v. Hugg. That is what this Court held in United States v. Navarro. And I would urge the panel to revisit that decision, if it hasn't yet, because I think it forecloses defendants' arguments here. You know, the as-applied facial distinction, that is a First Amendment concept, a Second Amendment concept. It doesn't have a meaningful basis in equal protection jurisprudence because, for the most part, claims are both facial and as-applied. That's what standing rules is. If you challenge a statute, generally it applies to you, and it would be — and it would be facially unconstitutional. What Mr. Windsor was talking about in Olson, that probably has to do with how the is defining the characterization. You're looking at the government action. We're not defining the class our own way based on a group of people that might have been excluded from Congress's rational basis. That is not the inquiry. We're looking at — Sotomayor, thank you, counsel. Thank you, Your Honor. You've exceeded your time. Thank you both, counsel, for your helpful arguments. The case just argued is submitted for decision by the Court. That completes our calendar for the morning. We are in recess until 9.30 a.m. tomorrow morning. All rise.
judges: RAWLINSON, KOH, Fitzwater